Mr. Levin May it please the Court, my name is David Levin and I represent the plaintiff appellant Vee's Marketing. The issue that's presented in this case is whether an employee benefit plan that only provides a death benefit to the beneficiary of a deceased participant is not substantially similar to a tax avoidance arrangement that funnels cash to owner employees for something other than death benefits as described in Notice 9534. Based on clear error, the District Court ruled that we had not satisfied our burden to show that the employee benefit plan was not substantially similar to the tax avoidance arrangement in 9534. The first error that the Court made was that the Court found that there was direct access to cash. The Court found that $400,000 was paid to, I'm going to, the Court said V's, I'm going to presume that the Court meant the individual. And the individual didn't receive any money. What was... Well, it was going to be death benefits, right? There's a death, there was a... Well, so someone was going to get this money and isn't that the problem? I'm sorry, say again? He's going to get the money without having to pay taxes? No, the issue here, this is not a deductibility, a tax deductibility case. The issue here is that, is whether or not Mr. V was going to receive any of this money. Why would it make a difference whether it was V or his, you know, descendants or whoever gets the death benefits? There is a significant difference. The death benefit after Mr. V dies that's paid to his designated beneficiary, who was his wife, is a tax, not only is it a tax protected benefit, but 9534, the notice, addresses benefits other than death benefits. So what we're looking for is whether there was a benefit other than a death benefit. And 9534 describes two benefits that are other than death benefits. They are disability benefits and severance benefits. When you get a disability benefit, that's paid to the living participant. You get a severance benefit, it's paid to the living participant. That was the focus of 95, the notice 9534, was the payment of money to the living participant. The case law that looks at it recognizes that where there were individual insurance policies for each one of the participants, where the participants actually could control the money, could borrow against the money, and could use the money, that that was tax avoidance. But 9534 addresses benefits other than death benefits. That's why, Your Honor, your question about what difference it makes is that the difference is one that takes this case and this plan out of notice 9534. So are you saying there's no way in which V himself could have benefited from this money? That's exactly right. Under the terms of the plan, the only benefit that's paid is a benefit that's paid when the participant dies. There was no way, and there's no evidence that he got any money, that he accessed any money, or that he received any money. In fact, no money's been paid yet. Mr. V is still alive and hopefully well, and when he dies, his beneficiary will receive the death benefit. Right. There's no dispute that he didn't receive the money. I think the dispute is whether he could have. That's the question. Wasn't he entitled to surrender the insurance at any time for up to its reserve value? No. That's not true. The court found, without a citation to the record, that Mr. V, I think it's on page nine of the opinion, of the district court opinion, that Mr. V executed a surrender, but that's actually plain error. If you look at the surrender notice, it's exhibit number 68, you'll see that there's no place for Mr. V to sign, and he didn't sign. The trustee and the plan administrator surrendered, because that's a power that they have. Because all that this plan promises is a death benefit. It doesn't promise cash money to any participant, and there isn't any cash money that's available to a participant. What happens when there's a surrender? You say the trustees surrendered. What happens when there's a surrender? In this particular instance, what happened was the asset of the trust moved from one contract to another. It moved from a contract that was with Money, Mutual of New York, to a contract that was with Fidelity Security Life, FSL. But there was no money that was provided to Mr. V in connection with the surrender, and the plan doesn't allow it. So we have now two errors where the court has shown, first of all, that the court said that he received money, which he didn't and can't, and the court said that he surrendered, which he didn't and he can't. So what you have is two elements of 9534 that the court found, which are both based on factual error. There's no support for the, and the court didn't provide any support in the record for it, because there isn't any support in the record for either of those. So without access and without receiving anything other than, providing anything other than death benefits, this can't be a 9534 arrangement. In addition, the court talks about experience rating and separate accounting, but in point of fact, the experience here was experience that wasn't to the advantage of Mr. V, or to V's marketing. The experience here was... The government says that $140,000 was used to purchase a paid-up death benefit for V of $400,000. It says his beneficiary will receive upon his death, but also, but the government also says V can surrender this paid-up life insurance at any time for an amount of the, up to the cash value of the insurance, which in September 2013 was $155,403. Is that wrong? Yes. Or incomplete? Or what? Well, first of all, it is wrong. Wasn't there a letter from Mone to Scott V that said that? I'm not sure if there is a letter or there isn't a letter, but what we have is the, I don't think if there was a letter like that, I don't know that it was from Mone, but what we do have is a circumstance where if you sell a death benefit and when all is said and done, people can buy and sell what they may want. If this benefit were sold, it would turn non-taxable income into taxable income. That can't be part of a tax avoidance program. And it certainly couldn't involve the plan because the plan prohibits the alienation of benefit. And there's no insurance contract that could be sold because Mr. V didn't have an insurance contract. The insurance contracts involved here were group term policies and they were owned by the trust. So could Mr. V have gone out and said to somebody, my wife is supposed to receive a death benefit, I want to sell that. Well, I guess he could have done that, but if he, although he could have done that, what he would have done is converted taxable, non-taxable income into taxable income. That's why I say it's hard to call that a tax avoidance system. In our reply brief, he pointed out that there is one circumstance where an individual can sell a death benefit that's tax protected. That's a viatical settlement, it's closely regulated by Internal Revenue Service and under 106, the Internal Revenue Code, and that is the one circumstance where you can do it, but the individual has to be terminally ill and expected to die within two years. And it's the sale of a contract, nothing else. But in this particular instance, there was no, I've run my time and I'd like to save something for a bottle if I may. Okay, well thank you Mr. Marvin. So Mr. Hutter? Yes, good morning Your Honor, thank you very much, may it please the Court, Randolph Hutter for the United States. I want to focus on exactly what is the proper focus of this case, which is 9534, the features described in 9534, and whether the plan at issue in this case is substantially similar to the arrangement described in 9534. And the district court found that it was, it stated that all of the factors were met and the evidence fully, completely supports that. The arrangements described in 9534, like the plan, the plan purports to provide welfare benefits. It informs participants that all contributions are tax deductible at the time they are made. The contributions to the plan are far in excess of what it costs to provide term insurance. The plan utilizes insurance policies that for all intents and purposes function just as universal life policies. It requires insurance companies to main separate accounting of each participant's assets. Mr. Levin said that there's no way in which V can use this insurance to be taxes, that if it's converted, you know, if he takes the cash or gives the cash to his beneficiary, that'll be taxable. That is probably the way that things should happen, but it still violates the Internal Revenue Code as a result. Now, I want to point out that in CJA's marketing brochures and everything, it says that this is a good way, the CJA plan is a good way to avoid estate taxes. Mr. Ankner, in his deposition, said that the people who choose to involve themselves in this plan do so for estate planning purposes in order to move assets from their corporation, make sure they don't get an individual's estate, and then pass it on to their beneficiaries. That's not a welfare benefit. That's property. A welfare benefit is supposed to provide insurance and benefits while you're working, and you don't then carry on an asset later on. So even if you did declare later on that that asset, that payout, was income, it's still, that's not the way, that's an improper use of a welfare benefit plan. It's not supposed to accumulate assets, and yet CJA said the primary focus of this- But what is the impropriety? I mean, what is the cost to the government? The impropriety is that you're taking a deduction, and it's not a deduction for an expense. It's a deduction of contributions you're making to build up an asset that you later take out of the company, and guess what? You've never paid income tax on that. CJA says in its program that there's a way to avoid that completely by transferring the rights to that insurance benefit to the beneficiaries without getting the payout directly. You've created, these individuals who invest in the plan, they've created an asset. That's not supposed to happen. Nothing under 9534, nothing under the statute allows that to happen. That's not a welfare benefit. So this $400,000 error that the district court made in saying that he actually received the $400,000, in light of that argument you've made, you'd say it's irrelevant? It is irrelevant. It is true he did not get a payout of $400,000. What he got was an insurance certificate that says this is your property, and by the way, it's worth $155,000. It keeps earning interest every year, and this is your property basically to do with what you will. You are not supposed to build up assets like that in a welfare benefit plan. And by the way, the very first exhibit that we put in our first supplemental appendix, of course, is the letter that you referred to, where it specifically says that the, basically, the insurance policy can be cashed in. So this is an entirely improper use of a welfare benefit plan. It creates an asset. It's designed for tax avoidance, specifically designed for tax avoidance, in the way that Mr. Anger testified. It's an asset protecting a state, a tax. Are you saying if it's cashed in, there's no tax? Well, CJA was promoting it as there should be no tax. Now, if they report it, that's good. I hope the IRS finds it when it is cashed in, if it ever is. But even if it's not, that's not the point. He's created, he's taken money from his corporation to create an asset to pass on to his beneficiaries, and he's taken deductions for that, that aren't providing welfare benefits. He's taken deductions. You're not supposed to take deductions for something like that, unless you contribute to, say, something like an IRA. You don't take deductions for a corporate expenditure that's going to build up an asset. Well, are you saying he's already obtained tax benefits? Is that what you're saying? Absolutely. Absolutely, and that case is in the tax court. He had individual liabilities, and as we mentioned in a footnote in our brief, that case is in the tax court. I don't believe a final settlement or decision has been entered in that case, but he absolutely has taken, in the IRS's opinion, deductions that were not ordinary and necessary. Well, why is there this case, as well as that, if the concern of the government is losing tax money, and that's being litigated in the tax court, what is the purpose of this litigation? Because the purpose of this litigation is to assign penalties. The IRS issued the Notice 9534, and it issues notices from time to time, describing listed transactions, and there's a specific penalty in the Internal Revenue Code. If you don't properly report being involved in listed transactions, and the whole reason for that is to combat these tax shelters, and to tell people up front, you invest in these things, you need to tell us about it. Furthermore, you need to think about it, and probably not do it, because the IRS wants to stop this abuse. So this is only, this case is only about the $10,000 penalty that was imposed for four different years, because V's did not properly report its engagement. The issue before this court is not... $40,000 is the entire... I'm sorry? $40,000 is all that's involved in this case? Yes, Your Honor. The issue before this court is not whether this plan is acceptable under 419 or 419A. The issue before this court is not whether any of these contributions are deductible. The only issue is whether V's Marketing participated in a transaction that is a listed transaction, and in this case, that means did they participate in a transaction that is substantially similar to that described in Notice 9534. That is the simple answer, issue before this court. It doesn't involve the complexities of how the plan actually works. But the evidence, the records, the exhibits, clearly support what the District Court found. It had no problem in the end. It conducted a trial. It went through a lot of exhibits. It had no problem coming to the conclusion that, yes, the plan just very obviously meets all of the features listed in 9534. And I take it the marketing materials and the plan documents were consistent with one another? They were certainly not consistent with one another. That's, we point to the exhibits and the way the plan was actually carried out in marketing and in examples that they gave to clients. The plan document is careful to stick within the parameters of the law, but the plan document does not control. The government has had many cases like involving welfare benefit plans recently. The Angelus, Booth, Neonatology, Prosser and Curcio. In most of them, the taxpayer, the individual says, but the plan document, it controls. And the courts don't look at that. The courts look at the way it actually was carried out. Form does not control over substance. So the plan document is a red herring. It can say what it wants to. The evidence clearly is. For example, in exhibits, in testimony, it says that the plan document was rewritten in 2000 to write out medical reimbursement being available. You, before that, you could get, you could build up these assets and you could then have it paid out to you in term, in form of medical reimbursements for health care that you had to pay for. By the way, that's an improper expense deduction. You can't take a deduction in one year for an expense that you take in 10 years from now. You can't do that. You can take a deduction for an expense you have that year. So, but that's beside the point. The point is that in exhibits, we show that in years following 2000, 2005, 2006, 2007, they still advertised and advised clients and potential clients that that medical reimbursement benefit was available. The plan document is not what is controlling in this case. Okay. Well, thank you very much, Mr. Hunter. Thank you. And Mr. Levin, I think you have a couple of minutes. If I may, Your Honor, you asked the question about whether the marketing material and the plan were consistent and the government has acknowledged. The marketing material and the plan were not consistent. There is no record evidence that this plan was administered pursuant to the marketing material. The record evidence is that the plan was administered pursuant to the plan document. The advertising was contrary, but advertising does not control unless the advertising was followed and the plan was administered pursuant to the advertising. Otherwise, the rule of law is, in this circuit and in the United States, that according to the Supreme Court and according to this circuit, that a plan is required to be administered in accordance with its terms. And there is no record evidence here that there was any benefit paid other than the death benefit upon the death of participants. And therefore, the notion that there was something else going on, my client, this is a question about whether or not my client is supposed to be penalized for what the plan did or whether my client gets penalized for somebody else's advertising. And 9534 isn't about advertising. 9534, that notice is about what the plan did. And Your Honor, when this penalty first came into being, it was $200,000 was the minimum penalty. By the time the government assessed my client, the Congress and the President had amended the penalty down from $200,000 to $10,000 a year. That's the minimum penalty. And the letter that the government has pointed to, which is the first letter in its supplemental appendix, is not to my client. Because my client didn't have an insurance contract. My client has a right to a benefit to be paid when Mr. V dies. The letter from Mone is to the trust. In fact, when the money to pay for the paid-up benefit, which, by the way, is part of a funding policy that's described in the plan under Section 6.1. It's not amazing or nefarious. A plan is required to have a funding policy. This plan did have a funding policy. It has a provision for the payment of benefits. It's Section 5.3 through 5.6. This case is not a deductibility case. This case is about whether or not the plan, which was administered according to its terms, is consistent or substantially similar to the arrangement in 9534. And I submit to you that the ruling by the district court that relied on error was erroneous and should be reversed. And I respectfully request that you do so. Thank you. Okay. Well, thank you very much, both counsel.